```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          OCALA DIVISION
```

RONALD L. COSNER,

                    Plaintiff,

vs.                                     Case No.  5:09-cv-372-Oc-29GRJ

HARRY CAULTON; DR. V. MESA; JUDITH
TORRES; DR. CARLOS GAMA; MARK REDD;
WALTER MCNEIL,

                    Defendants.
_____


## **OPINION AND ORDER**

### **I.**

This matter comes before the Court upon review of the file. Ronald L. Cosner, a *pro se* plaintiff, initiated this action by filing a Civil Rights Complaint Form (Doc. #1) while in the custody of the Florida Department of Corrections ("DOC"). Pursuant to the Court's October 14, 2009 Order, Plaintiff filed an Amended Complaint (Doc. #6, Amended Complaint) with exhibits, which include grievances Plaintiff filed in connection with his claim and copies of Plaintiff's medical records. Amended Complaint at 11-25. Plaintiff seeks leave to proceed *in forma pauperis*. Doc. #7.

### **II.**

Plaintiff alleges that the Defendants violated his constitutional rights by showing deliberate indifference to his serious medical condition while he was incarcerated at the Reception Medical Center ("RMC") and Lake Correctional Institution

("Lake Correctional"). See generally Amended Complaint. Plaintiff names the following defendants: Harry Coulton, who he identifies as the "senior health service administrator" at Lake Correctional; Doctor V. Mesa, "chief health officer" at Lake Correctional; Judith Torres, nurse practitioner, Florida Department of Corrections; Doctor Carlos Gama, Neurologist from the Reception and Medical Center; Mark Redd, Assistant Secretary, Florida Department of Corrections; and Walter McNeil, Secretary, Florida Department of Corrections. Id. at 5-6. According to the Amended Complaint, Plaintiff has "chronic severe headaches several times a week, which cause him to vommit [sic], have sensitivity to light, and are u[n]bearably painful." Id. at 7. In 2007, while Plaintiff was incarcerated at the RMC, Doctor Gama prescribed him a medicine to prevent his headaches. Plaintiff claims that the medicine was ineffective. Id. Plaintiff alleges that he was then provided with only a "mild pain reliever" for his headaches. Id.

Plaintiff states that several months went by before he was sent back to the RMC to see Doctor Gama, and during that time he suffered in pain from his headaches. Id. at 8. Plaintiff alleges that Doctor Gama refused to treat him for his pain and sensitivity to light and sound. Further, Plaintiff claims that the medical tests were delayed and when he asked Doctor Gama for pain management therapy, he was refused. Plaintiff states that Doctor Gama ordered an MRI, which showed that he has a "cortical atrophy";

however, Doctor Gama told Plaintiff the result was unrelated to his headaches.  Id.

Prior to his arrival at RMC, Plaintiff was incarcerated at Lake Correctional, Plaintiff alleges that he continued to complain about the pain caused by his migraine headaches.  Id.  Plaintiff avers that he requested emergency case, but was told that his condition did not warrant emergency care.  Id.  Plaintiff further avers that the nurse Judith Torres, from Lake Correctional, refused to treat his headaches while he waited for a consultation with Doctor Gama at the RMC.  Id.  Plaintiff admits that, in March 2009, he refused a medical trip to the RMC when he mistakenly thought it was a medical consult for a gastrointestinal physician, not a neurology consult.  Plaintiff claims that it then took weeks to reschedule his appointment with the neurologist at RMC.  Id. at 9.

Plaintiff contends that Mark Redd and Walter McNeil, as the Assistant Secretary and Secretary of the DOC, are responsible for enforcing the DOC's medical policies.  Plaintiff further contends that Defendants Redd and McNeil were aware of the delays that he encountered in receiving his medical treatment, but they failed to correct the problem.  Id.  With regard to Defendants Judith Torres, Harry Coulton, and Doctor V. Mesa, Plaintiff claims that these Defendants denied him "emergency medical care" and "unnecessarily delayed scheduling his visits to the neurologist" during his incarceration at Lake Correctional.  Id.  With regard to Doctor Gama, Plaintiff contends that he chose "an easier and less

efficacious form of medical treatment." Id. Plaintiff also claims that Doctor Gama was aware of the delays in medical treatment Plaintiff encountered, but took no action to remedy the problem. Id. As relief, Plaintiff seeks monetary damages and any additional relief that the Court deems appropriate. Id. at 10.

**III.**

The Prison Litigation Reform Act requires that the Court review all complaints against governmental officers and entities to determine whether the action is "frivolous, malicious, or fails to state a claim upon which relief can be granted; or seeks monetary relief from a defendant who is immune from such relief." See 28 U.S.C. § 1915A(a), (b)(1), (b)(2). In essence, § 1915A is a screening process to be applied *sua sponte* and at any time during the proceedings. In reviewing a complaint, however, the courts must apply the long established rule that *pro se* complaints are to be liberally construed and held to a less stringent standard than pleadings drafted by attorneys. Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). And, the court views all allegations as true. Brown v. Johnson, 387 F.3d 1344, 1347 (11th Cir. 2004).

A case is deemed frivolous where the complaint lacks any arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); see also Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1349 (11th Cir. 2002); Bilal v. Driver, 251 F.3d 1346 (11th Cir. 2001). Frivolous claims are those that describe

-4-

"fantastic or delusional scenarios." <u>Bilal</u>, 251 F.3d at 1349. The court recognizes that generally it is preferable to serve a *pro se* complaint before dismissing it as frivolous under § 1915A(b)(1). <u>Williams v. Sec. for the Dept. of Corrections</u>, 131 Fed. Appx. 682, 686 (11th Cir. 2005). Nonetheless, when the Court finds from the "face of the complaint . . . that the factual allegations are clearly baseless or that the legal theories are indisputably meritless" the Court may dismiss the suit without further delay since such suits "unduly burden the courts, obscure meritorious claims, and require innocent parties to expend significant resources in their defense." <u>Id.</u> (quotations and citations omitted); <u>Nietzke</u> 490 U.S. at 327; <u>Denton v. Hernandez</u>, 504 U.S. 25, 32 (1992); <u>Bilal</u>, 251 F.3d at 1349. The standard governing Federal Rule of Civil Procedure 12(b)(6) dismissals apply to dismissals under § 1915(e)(2)(ii). <u>Alba v. Montford</u>, 517 F.3d 1249, 1252 (11th Cir. 2008); <u>Mitchell v. Carcass</u>, 112 F.3d 1483, 1490 (11th Cir. 1997). Section 1915(e)(2)(B)(ii) is identical to the screening language of § 1915A.[1] Thus, a complaint is subject to dismissal for failure to state a claim if the facts as plead do not state a claim for relief that is plausible on its face. <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1968-69 (2007)(abrogating <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)).

---

[1]Plaintiff seeks to proceed *in forma pauperis* in this action. Thus, the Complaint is also subject to dismissal under 28 U.S.C. section 1915(e)(2)(B)(ii).

Additionally, the Court may dismiss a case when the allegations in the complaint on their face demonstrate that an affirmative defense bars recovery of the claim. Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001).

**IV.**

"[D]eliberate indifference to [the] serious medical needs of [a] prisoner [ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)(quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)); Campbell v. Sikes, 169 F.3d 1353 (11th Cir. 1999). In order to state a claim for a violation under the Eighth Amendment, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. This showing requires a plaintiff to satisfy an objective and a subjective inquiry. Farrow, 320 F.3d at 1243 (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000)). A plaintiff must first show that he had an "objectively serious medical need." Id. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. Second, a plaintiff must establish that a defendant acted with "deliberate

indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); and (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007)(quoting Farmer v. Brennan, 511 U.S. 825, 842 (1994)). Inadvertence or mere negligence in failing to provide adequate medical care does not rise to a constitutional violation. Farrow, 320 F.3d at 1243. Rather, "medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). The Supreme Court has concluded that decisions such as whether an x-ray, additional diagnostic techniques, or other forms of treatment are indicated are "[c]lassic example[s] of matters for medical judgment." Estelle, 429 U.S. at 107. The course of treatment chosen by a medical official would appear to be such "a classic

example of a matter for medical judgement." See Estelle, 429 U.S. at 107. Thus, no constitutional violation exists where an inmate and a prison medical official merely disagree as to the proper course of medical treatment. See Harris, 941 F.2d at 1505.

**V.**

Plaintiff's Complaint is subject to dismissal pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted. Assuming without deciding that Plaintiff's migraine headaches constitute a serious medical condition, Plaintiff cannot show that Defendants exhibited deliberate indifference to his serious medical condition.

The Complaint, particularly Plaintiff's exhibits, evidence that Plaintiff was repeatedly seen by the medical department at Lake Correctional and referred to see Doctor Gama, the neurologist, at RMC. See generally Amended Complaint at 11-25. Plaintiff's exhibits show that on January 2, 2008, he saw Doctor Gama and was provided Excedrin migraine medicine. Id. at 15. On March 6, 2008, Plaintiff still complained of his migraines when he saw Doctor Gama, so he was prescribed 50 milligrams of Topomax as preventative therapy for his migraine headaches, 25 milligrams of Phenergan for his nausea, and either 500 milligrams of Tylenol or 600-800 milligrams of Ibuprofen. The Doctor also recommended that Plaintiff pay attention to what triggers his migraine headaches. Id. at 16. On August 4, 2008, Plaintiff saw Doctor Gama and told

him that the Topomax was not working. Id. at 17. In response to Plaintiff's complaints, Doctor Gama recommended that Plaintiff have a CT scan, prescribed 75 milligrams of Topomax, and Ibuprofen and Tylenol as needed. Id. at 18. On December 1, 2008, Plaintiff had another appointment with Doctor Gama. Doctor Gama's notes indicate that Plaintiff was "very opposed to trying preventative medication treatment and instead wanted pain medicine." Id. at 20. The record shows that Doctor Gama prescribed a different medication for Plaintiff's migraine headaches. Id. On January 15, 2009, Doctor Gama's notes show that Plaintiff had an MRI. Id. at 22, 25. The Doctor prescribed yet another prescription to treat Plaintiff's migraine headaches because Plaintiff complained no prescription was effective. Id. Later that month, as Plaintiff acknowledges in his Complaint, Plaintiff refused his neurology consult. Id. at 24.

Although Plaintiff may have thought another course of treatment was more appropriate for his migraines, the exhibits Plaintiff attaches to his Amended Complaint clearly evidence that the Defendants did not act with deliberate indifference to his migraine headaches. Niemic v. Maloney, 448 F. Supp. 2d 270, 279 (D. Mass. Aug. 11, 2006)(finding no deliberate indifference when inmate was provided multiple medicines for his migraine headaches and he was seen on several occasions by a neurologist, a gastroenterologist, pain management specialist, all of whom performed tests and ongoing evaluations). Plaintiff complains of a delay in receiving medical treatment, but the Doctor's notes each

-9-

time recommend that Plaintiff should return for a follow-up consult as needed in two, or three months. The record shows that Plaintiff timely saw Doctor Gama. Plaintiff's disagreement with the treatment recommended by Doctor Gama fails to provide a basis for a constitutional claim. Harris, 941 F.2d at 1505.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. #7) is **DENIED**.

2. The Amended Complaint (Doc. #6) is **DISMISSED** pursuant to 28 U.S.C. § 1915A, or 28 U.S.C. § 1915(e)(2)(B)(ii).

3. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___18th___ day of February, 2010.

_____
JOHN E. STEELE
United States District Judge


SA: alj
Copies: All Parties of Record